In the Matter of GUARDIAN CAPITAL CORP., Doing Business as RAMADA INN and the CABARET, Petitioner, v. NEW YORK STATE DIVISION OF HUMAN RIGHTS, Respondent.— Proceeding, pursuant to section 298 of the Executive Law, to review an order of the State Human Rights Appeal Board, dated April 30, 1974, which affirmed an order of the State Division of Human Rights, dated June 28, 1973, and cross motion by the division to enforce the order of the appeal board. Petitioner, Guardian Capital Corp., operates a Ramada Inn in Binghamton, New York, which contains a dining facility known as the Cabaret. Prior to July 18, 1972 it employed the complainant, John W. Plebani, as a waiter in that restaurant. He alleged that his discharge on that date was the sole product of unlawful sex discrimination as prohibited by section 296 of the Executive Law. Following a hearing, the State Division of Human Rights agreed and, among other items, ordered his reinstatement together with compensatory back pay on June 28, 1973. That order was affirmed by the Human Rights Appeal Board without modification on April 30, 1974 and the employer now petitions this court to review that action under section 298 of the Executive

Law. The division has cross moved for an order of enforcement. The record conclusively demonstrates that Plebani was not discharged for any lack of competence on his part, but solely because the employer had unilaterally decided to replace the entire complement of male waiters in the Cabaret with waitresses. The motivation for this decision was forthrightly admitted to stem from a belief that, after attiring the replacements in alluring costumes, waitresses would better be able to enhance petitioner's food sales volume. Petitioner maintains that this situation presents no violation of the law, claiming an exception under section 296 (subd. 1, par. a) of the Executive Law which allows, in general, certain sexually discriminatory practices if based on a *bona fide* occupational qualification. Respondent concedes the applicability of the exception to this case, but argues that no such qualification was shown to exist by this employer. We agree. The burden of proving entitlement to the exception must be borne by the party claiming its benefit (see *State Div. of Human Rights* v. *New York City Dept. of Parks & Recreation,* 38 A D 2d 25; *New York State Div. of Human Rights* v. *New York-Pennsylvania Professional Baseball League,* 36 A D 2d 364, affd. 29 N Y 2d 921). Here, the employer established only its beforehand belief that such action would lead to economic benefit. Its attempted comparison of sales volume between the weeks preceding and following the change, although arguably tending to demonstrate a slight improvement in sales, wholly failed to consider whether any such differences could be attributed to the replacement of waiters by waitresses. Consequently, we need not consider any of the broader issues raised by the parties to support respondent's finding that the petitioner had not adduced proof sufficient to establish the claimed exemption. We have examined petitioner's remaining contentions and find them to be without merit. Petitioner's claim that this court lacks jurisdiction to enforce the order of the appeal board because the division failed to institute such a proceeding within 30 days (Executive Law, § 298) is manifestly unsound as it would mandate compliance for that period only and effectively strip such orders of any beneficial impact. The time limit referred to by that statute concerns a proceeding for review. The division's cross motion should be granted (cf. *Bethlehem Steel Corp.* v. *New York State Div. of Human Rights,* 36 A D 2d 566). Petition dismissed, and cross motion granted, without costs. Herlihy, P. J., Staley, Jr., Sweeney and Kane, JJ., concur; Reynolds, J., concurs in the following memorandum. Reynolds, J. (concurring): It is with reluctance that I am agreeing to affirm. This case is very disturbing in light of the Human Rights Division's position in the Playboy case. Petitioner Guardian contends that the Cabaret is, in many respects, comparable to a Playboy Club. Petitioner draws attention to the decision of the Human Rights Appeal Board in *Margarita St. Cross* v. *Playboy Club of New York, Playboy Clubs Int.* (Appeal No. 773, Case No. CSF 22618–70), in particular the following language: " Although the issue is not stressed, it is to be noted in passing that the restriction to females only of the eligibility for employment as a Bunny constitutes a bona fide occupational qualification and as such is exempt from the provisions of section 296 of the Human Rights Law. This is somewhat similar to a juvenile part in a theatrical production." The language in *St. Cross (supra)* is only dicta, but it does appear that the Human Rights Division is being inconsistent in suggesting that "Bunnies" are in a different category than the waitresses in the Cabaret. Petitioner was attempting to emulate the Playboy Club atmosphere and it is difficult for me to understand what the special duties of the "Bunnies" were that the waitresses in the Cabaret don't have. In *St. Cross (supra),* the appeal board's opinion stated that although, in the writer's opinion, a business such as respondent's (Playboy Club) which is

based upon the commercial exploitation of sex appeal and deliberately seeks so to titilate and entice has little to recommend its establishment or perpetration, "its existence is not in violation of the Human Rights Law". It would seem that the division's position in this case involving a small entrepreneur in Binghamton, New York differs widely from their stated thinking in the Playboy Club case. Can it be that immense wealth and great influence make a difference?